**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DORNA SPORTS, S.L.,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No. 24-cv-5115<br><br>Judge Manish S. Shah<br><br>Magistrate Judge Jeannice W. Appenteng |

**PLAINTIFF'S RESPONSE TO THE MOTION TO VACATE DEFAULT JUDGMENT OF DEFENDANT NO. 54 "KORENOFER" [DKT. NO. 44]**

Plaintiff, DORNA SPORTS, S.L. ("MOTOGP" or "Plaintiff"), responds to the Motion to Vacate Default Judgment ("Motion") [Dkt. No. 44] filed by Defendant No. 54 "korenofer" ("Defendant") and in support states as follows:

    **I.  INTRODUCTION**

Despite having received multiple emails including copies of the: 1) Summons, Temporary Restraining Order ("TRO") and Complaint; 2) Motion for Entry of a Preliminary Injunction and 3) Motion for Entry of Default and Default Judgment, Defendant No. 54 "korenofer" failed to appear or defend itself in this matter. The above-referenced emails were sent to the email addresses provided by the e-commerce platform eBay, PayPal, Inc. ("PayPal") and Payoneer which are associated with Defendant's account.

Defendant erroneously claims that consumers were not confused by Defendant's use of the MOTOGP Trademark and since Defendant used eBay's system to check for trademark infringement, it should not be held countable for its actions.

Defendant used Plaintiff's Trademark to market and sell counterfeit products MOTOGP Products to Plaintiff's detriment and, as a result, damages for Defendant are not warranted.

Defendant's arguments fail for the reasons set forth below, and, as a result, Defendant's Motion should be denied.

## II. PROCEDURAL SUMMARY

On June 20, 2024, Plaintiff filed its complaint against Defendant, among others, for trademark infringement and counterfeiting (Count I); false designation (Count II) and violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count III). [Dkt. No. 1]. On July 18, 2024, Plaintiff filed an Amended Complaint and Amended Schedule A. [Dkt. Nos. 10, 11]. Also on July 18, 2024, Plaintiff filed a Motion for an *Ex Parte* Entry of a TRO, supporting Memorandum and Exhibits. [Dkt. Nos. 12-19]. On November 23, 2024, this Court granted Plaintiff's Motion for Entry of a TRO. [Dkt. Nos. 22, 23].

On August 15, 2024, Plaintiff filed a Motion for Entry of a Preliminary Injunction and supporting Memorandum against Defendant. [Dkt. Nos. 28, 29]. On August 16, 2024, Plaintiff effectuated service of process consistent with the mode of service directed in paragraph 11 of the TRO. [Dkt. No. 32]. On August 28, 2024, this Court granted Plaintiff's Motion for Entry of a Preliminary Injunction against Defendant. [Dkt. Nos. 33, 34].

On September 19, 2024, Plaintiff filed a Motion for Entry of Default and Default Judgment and supporting Memorandum against Defendant. [Dkt. Nos. 38, 39]. On September 25, 2024, this Court entered default against Defendant. [Dkt. Nos. 42, 43].

2

On October 2, 2024, Defendant filed a Motion to Vacate Default Judgment. [Dkt. No. 44]. On October 3, 2024, this Court set a briefing schedule whereby Plaintiff's Response is due by October 7, 2024. [Dkt. No. 46].

### III. LEGAL STANDARD

Rule 60(b). Relief from a Judgment or Order.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60.

"Federal Rule of Civil Procedure 60(b) permits a party to seek relief from a final judgment, order, or proceeding on the grounds of mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud. It is well-established that Rule 60(b) relief 'is an extraordinary remedy and is granted only in exceptional circumstances.' " *Dickerson v. Bd. of Educ. of Ford Heights, Ill.,* 32 F.3d 1114, 1116 (7th Cir. 1994).

### IV. ARGUMENT

#### A. eBay's Listing Guidance is Not Controlling Authority

Defendant erroneously claims that since it utilized eBay's VERO system to check for trademark infringement and was found in compliance, it is not liable for trademark infringement.

3

(Defendants' Motion, [Dkt. No. 44, ¶¶ 1-3]. eBay's efforts to assist sellers avoid trademark infringement is not controlling authority for this or any other Court. Regardless of eBay's policies or guidance, it is ultimately the responsibility of each seller to avoid infringing the intellectual property rights of others on its website.

Sellers like Defendant are responsible for ensuring that their product listings are not infringing the intellectual property of others. Plaintiff is the owner of U.S. Trademark Registration Nos. 2,947,076 and 3,508,867 for "MOTOGP design and word marks for classes 22 and 39 which cover clothing such as the hat being marketed and sold by Defendant. (*See* Exhibit A – Declaration of Enrique Aldama Orozco, ¶ 5 and Exhibit B – Trademark Registrations). The 2,947,076 Trademark was registered on May 10, 2005; and the 3,508,867 Trademark was registered on September 30, 2008. *See* Exhibit B. The MOTOGP Trademarks are valid, subsisting, and in full force and effect. *See* Exhibit A, ¶ 5. The MOTOGP Trademarks have been continuously used and never abandoned. *Id.* at ¶ 7.

As a result, Defendant's claim regarding non-infringement due to compliance with eBay's internal policies fail and Defendant's Motion should be denied.

**B. Defendant Fails to Satisfy the Elements to Vacate Default Judgment**

Defendant's claim that Default Judgment should be vacated should be disregarded because Defendant fails to satisfy the essential elements to vacate default judgment. "Rule 60(b)(1) provides that "[o]n a motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding" upon a showing of 'mistake, inadvertence, surprise, or excusable neglect.' Our review of district court orders denying this relief is exceedingly deferential and is limited to discerning whether the district court abused its

4

discretion. Only if no reasonable person could agree with the district court's decision will it be disturbed." *Jones v. Phipps*, 39 F. 3d 158, 162 (7th Cir. 1994).

"As the Rule 60(b)(1) standard has developed, a specialized three-part standard has evolved which squarely places the burden on the moving party to show: (1) "good cause" for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint. *Id.* This narrowness is achieved by interpreting the three-part standard in light of the language of Rule 60(b)(1) which, by its very terms, establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Id.*

Since Defendant is unable to satisfy any of the prongs for vacating a default judgment, the default judgment properly entered against Defendant should stand and Defendant's Motion should be denied.

1. Defendant Cannot Demonstrate "Good Cause" to Vacate Default

As to the first prong, Defendant is unable to demonstrate 'good cause' for vacating the properly entered default judgment. Defendant erroneously claims that "…during early July 2024 [Defendant] decided to stop my eBay selling (short) adventure and removed the listing …" (Defendant's Motion [Dkt. No. 44, ¶ 4]).

The complained about listing occurred on March 19, 2024. *See* Exhibit C- Evidence of Infringement – korenofer). Plaintiff filed its initial complaint on June 20, 2024 [Dkt. No. 1] and Defendant was properly served and notified of the present proceedings. [Dkt. No. 32].

Simply claiming that Defendant has removed the infringing listing does not permit Defendant to profit off its prior infringement. Plaintiff has been harmed by Defendant's activities

5

and, as a result, Plaintiff should be compensated by allowing the Default Judgment to stand and keeping the permanent injunction in place to prevent any future infringement by Defendant.

2. Defendant Took Quick Action to correct the Default

Plaintiff concedes that Defendant took quick action to vacate default judgment as Defendant's Motion was filed one (1) week after entry of Default and Default Judgment.

However, Defendant had knowledge of the present matter, was properly served and received copies of the pleadings. Since Defendant is unable to satisfy the other prongs required for vacating default judgment, Defendant's Motion should be denied.

3. Defendant is Unable to Demonstrate a Meritorious Defense

As to the third and final prong, Defendant does not have a meritorious defense regarding its liability for trademark infringement and counterfeiting. An individual is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show: (1) its mark is distinctive enough to be worthy of protection; (2) Defendant is not authorized to use the trademark; and (3) Defendant's use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005).

In the present case, Plaintiff has satisfied all three requirements of the Lanham Act. Regarding the first two elements, Plaintiff's MOTOGP Trademarks are inherently distinctive and identify the merchandize as goods from Plaintiff. *See* Exhibit A, ¶ 6. Furthermore, the

registrations for the MOTOGP Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the NARUTO Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiff has not licensed or authorized Defendant to use the MOTOGP Trademarks, and Defendant is not an authorized retailer of genuine MOTOGP Products. Exhibit B ¶ 10.

Plaintiff satisfies the third factor, as well. The Defendant is selling Counterfeit MOTOGP Products using the MOTOGP Trademarks, and such use is likely to cause a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See* Exhibit C – Evidence of Infringement. In this case, since Defendant uses the MOTOGP Trademark in the product listing to sell baseball hats, consumers will be confused and believe that Defendant's products are genuine MOTOGP Products or are sponsored or endorsed by Plaintiff. Defendant is intentionally using the MOTOGP Trademarks to confuse and deceive the consuming public into thinking that Defendant's Counterfeit MOTOGP Products are manufactured by or emanate from Plaintiff and is purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation.

As such, Defendant fails to set forth a meritorious defense for vacating the Default Judgment that was properly entered and, as a result, Defendant's Motion should be denied.

C. **Damages are Not Warranted**

Damages for a wrongful injunction are not warranted in this matter, nor requested by Defendant. This Court properly issued a preliminary injunction [Dkt. No. 34] and a permanent injunction [Dkt. No. 43] due to Defendant's infringement of Plaintiff's MOTOGP Trademarks. Furthermore, Plaintiff has been injured by Defendant's infringement. Defendant is not authorized to use Plaintiff's trademarks or copyrights, nor is Defendant an authorized retailer for Plaintiff. *See* Exhibit A, ¶ 10.

Plaintiff's goodwill and reputation are irreparably damaged when the MOTOGP

Trademarks are used on goods not authorized, produced or manufactured by Plaintiff. *Id.* at ¶ 18. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. *Id.* The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. *Id.*

Plaintiff is further irreparably harmed by the unauthorized use of the MOTOGP Trademarks because counterfeiters take away Plaintiff's ability to control the nature and quality of products used with the MOTOGP Trademarks. *Id.* at ¶ 19. Loss of quality control over goods using the MOTOGP Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable. *Id.* The sale of Counterfeit MOTOGP Products using the MOTOGP Trademarks also causes consumer confusion, which weakens Plaintiff's brand recognition and reputation. *Id.* at ¶ 20. Consumers who mistakenly believe that the Counterfeit MOTOGP Products they have purchased originated from Plaintiff will come to believe that Plaintiff offers low-quality products. *Id.* Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine MOTOGP Products, resulting in a loss or undermining of Plaintiff's reputation and goodwill. *Id.*

Plaintiff is further irreparably damaged due to a loss in exclusivity. *Id.* at ¶ 21. The MOTOGP Products are meant to be exclusive. *Id.* Plaintiff's extensive marketing and distribution of MOTOGP Products are aimed at growing and sustaining sales of MOTOGP Products. *Id.* The MOTOGP Trademarks are distinctive and signify to consumers that the products originate from MOTOGP and are manufactured to Plaintiff's high-quality standards. *Id.* When counterfeiters use the MOTOGP Trademarks on goods without Plaintiff's authorization, the exclusivity of Plaintiff's products, as well as Plaintiff's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales. *Id.*

Plaintiff has been injured due to Defendant's activities and, as a result, damages are not warranted nor should be given to Defendant.

## V. CONCLUSION

In conclusion, for the reasons stated above, Defendant's Motion to Vacate the Default Judgment should be denied and the Final Judgment Order entered against the Defendant should stand.

Respectfully submitted,

Dated: October 8, 2024

By: s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Robert P. McMurray (Bar No. 6324332)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
wkalbac@hsplegal.com
Attorneys for Plaintiff
DORNA SPORTS, S.L.

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies on October 8, 2024, that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system.

/s/ *Michael A. Hierl*